Joe R.B. HACKER, Troy Thompson and L. Frank Sadler, Partners, d/b/a Hacker, Thompson & Sadler, a Kentucky general partnership; Citizens Lumber and Supply Co., Inc., a Kentucky corporation; Joe R.B. Hacker; Troy Thompson; and Shadeland Venture, III, a Kentucky limited partnership, Appellants,

v.

Scotty BAESLER, Mayor; Lexington–Fayette Urban County Council, comprised of Scotty Baesler, Mayor, Pam Miller, Bob Babbage, John T. Wiggington, Richard Perry, Jim H. Combs, Joby A. Gastineau, III, David B. Bunnell, Barkley L. Blevins, Tom M. Fields, Rev. Michael Wilson, Debra A. Hensley, Roy Durbin, Chuck Ellinger, Fernita Wallace and Donald Todd; Lexington–Fayette Urban County Planning Commission, comprised of W. Rush Matthews, Chairman, William B. Wharton, L.T. Flynn, Robert E. Gott, Marty Howard, Anita Madden, Mary Breeding, Walter W. May, Thomas Cooper, Rose Lucas, and Roy Walton; Lansdowne Company, Inc., a Kentucky corporation; Gainesway Neighborhood Association, Inc.; Thomas E. Field; Mary P. Allen; Mark D. Kendrick; Bernard J. McCarthy; Casimir M. Wojcik, individually and as agent for the Tanbark Association of Neighbors, Inc.; and Jerry Sullivan, individually and as a representative of the Walnut Grove–Belleau Wood Neighborhood Association, Appellees.

No. 89–SC–979–DG.

Supreme Court of Kentucky.

May 9, 1991.

As Modified on Denial of Rehearing
Aug. 29, 1991.

Mark B. Davis, Brown, Todd & Heyburn, Louisville, E. Lambert Farmer, Jr., Keith Moorman, John W. Hays, Brown, Todd & Heyburn, Lexington, for appellants.

Vicki L. Brooks, Edward W. Gardner, Lexington–Fayette Urban County Government, Dept. of Law, Lexington, for appellees, Scotty Baesler, Mayor, Lexington–Fayette Urban County Council, and Lexington–Fayette Urban County Planning Com'n.

Phillip D. Scott, Steven Lynn Spalding, David A. Owen, Michael L. Ades, T. Robin Cornette, Greenebaum Doll & McDonald, Lexington, for appellee, Lansdowne Co., Inc.

Stephen D. Milner, Landrum & Shouse, Lexington, for appellee, Gainesway Neighborhood Ass'n, Inc.

Fred E. Peters, McCoy, Baker & Newcomer, Lexington, for appellee, Jerry Sullivan.

Thomas E. Field, pro se.

Mary P. Allen, pro se.

Mark D. Kendrick, pro se.

Bernard J. McCarthy, pro se.

Casimir M. Wojcik, pro se.

COMBS, Justice.

Appellants Hacker, Thompson, and Sadler, as owners in partnership of a parcel of land located in Lexington–Fayette County, submitted a proposal for a zoning amendment, seeking to effect a change in the property's zoning classification.

The application was made and processed in accordance with the procedures established by KRS 100.211(1).[1] The Urban County Planning Commission recommended that the request for rezoning be denied. The Urban County Council, by a majority of its entire membership, voted to override the commission's recommendation, and passed an ordinance adopting the proposed amendment.

This ordinance became the subject of a mayoral veto. Taking the position that the measure was not subject to veto, the appellants brought an action in Fayette Circuit

[1]. "A proposal for amendment to any zoning regulation may originate with the planning commission of the unit, with any fiscal court or legislative body which is a member of the unit, or with the owner of the property in question. Regardless of the origin of the proposed amendment, it shall be referred to the planning commission before adoption. The planning commission shall then hold at least one (1) public hearing after notice as required by KRS Chapter 424 and make recommendations to the various legislative bodies or fiscal courts involved, and it shall take a majority of the entire legislative body or fiscal court to override the recommendation of the planning commission." KRS 100.211(1).

Court. That court, and subsequently the Court of Appeals, held that the mayor's veto power extends to the rezoning ordinance.

We reverse.

■ Local authority to regulate land use derives from the police power of the General Assembly, delegated to cities and counties by way of KRS Chapter 100. KRS 100.211 details the exclusive procedure by which a zoning map amendment may be accomplished. Once the planning commission has made its recommendation on a proposed amendment, the legislative body may override the commission by a full majority vote. It is apparent that the General Assembly intended that an ordinance adopting a zoning amendment, enacted pursuant to the statute, is final and effective, subject only to judicial review pursuant to KRS 100.347(3).[2] The statutory procedure does not contemplate that the ordinance is subject to veto.

■ Appellees contend that the General Assembly has authorized the mayoral veto by way of KRS 67A.060, which grants ordinance powers to urban-county governments, and which provides, in part:

(4) All ordinances and resolutions shall be effective upon passage, *unless*[3] *timely vetoed* by the chief executive officer of the urban-county government *pursuant to the provisions of the comprehensive plan of the urban-county government.* [Emphasis added; footnote added.]

The Lexington–Fayette Urban County Charter[4] appears to confer upon the mayor the power to veto virtually *any* ordinance. With enumerated exceptions not relevant here, no ordinance becomes effective upon passage. In the present context such an interpretation of the charter places it in direct conflict with a general statute, KRS 100.211, whereby the General Assembly has provided a comprehensive scheme of legislation on the subject of zoning map amendment. Alteration of this scheme by urban-county governments is not contemplated by the grant of powers to such governments via KRS 67A.060(1),[5] which forbids the enactment of ordinances in conflict with general statutes or the constitution. Whether or not the charter is technically an "ordinance," there is evidenced no legislative intent to authorize a local government to supersede a statute by any means. Moreover, KRS 67A.020 provides that the comprehensive plan of an urban-county government (which plan is presum-

---

**2.** "Any person or entity claiming to be injured or aggrieved by any final action of the legislative body of any city, county or urban-county government, relating to a map amendment shall appeal from the action to the circuit court of the county in which the property, which is the subject of the map amendment, lies." KRS 100.-347(3).

**3.** We observe that KRS 100.211(1), *supra,* imposes no such qualification on the finality or effectiveness of a zoning map amendment ordinance.

**4.** "The Mayor is authorized to approve or disapprove ordinances and resolutions adopted by the Council, except ordinances and resolutions relating to:
  A.  The revision or amendment of this Charter;
  B.  The decennial redistricting of council districts;
  C.  The operation and internal affairs of the Council;
  D.  The authorization or conduct of investigations by Council as provided in § 4.08 of this Charter.

Every ordinance or resolution adopted by the Council over which the Mayor has veto power shall be presented to the Mayor for his consideration. If he approves the ordinance or resolution, he shall sign it and it shall become effective according to the terms thereof. If he disapproves, he shall return the same to the Council without his signature accompanied by a message indicating the reasons for his disapproval. Any ordinance or resolution so disapproved shall become effective when, subsequent to its return to the Council by the Mayor, it shall be adopted by a roll-call vote of three-fifths (3/5) of all members of the Council...." Lexington–Fayette Urban County Charter § 5.05.

**5.** "Urban-county governments may enact and enforce within their territorial limits such tax, licensing, police, sanitary and other ordinances not in conflict with the constitution and general statutes of this state now or hereafter enacted, as they shall deem requisite for the health, education, safety, welfare and convenience of the inhabitants of the county and for the effective administration of the urban-county government." KRS 67A.060(1).

ably embodied in the charter) must comport with the Constitution of Kentucky. This requirement would of course apply even in the absence of the statute. Insofar as the charter purports to modify the criteria of KRS 100.211(1), it represents an attempted usurpation of the legislative power of the General Assembly, offending section 29 of the Kentucky constitution.[6] Subsection (4) of KRS 67A.060, *supra,* does not validate a veto exercised pursuant to an unconstitutional provision of the Urban County Charter.

█ The veto power is also inconsistent with constitutional guarantees of due process and equal protection, given the unique attributes of a zoning map amendment proceeding. Much argument has been offered as to whether the amendment process ought to be labeled legislative, judicial, quasi-judicial, etc. But the ultimate question is, considering the nature, subject, and purpose of the proceeding and the constitutional rights of the participants, how much process of law is due?

In *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n,* Ky., 379 S.W.2d 450 (1964), it was held that the decision on a proposal to rezone a property is a non-judicial function, and, separation of powers being mandated by the constitution, a function which the legislature may not impose upon the courts by mandating a trial de novo upon appeal. This Court termed the decision "administrative," and concluded that the standard of review is: (1) whether the Commission[7] acted within its statutory powers; (2) whether procedural due process was afforded; and (3) whether the decision was *supported by substantial evidence.* 379 S.W.2d, at 456. In adopting this standard of review, *American Beauty Homes* holds, by necessary implication, that the amendment procedure, while non-

judicial, is also non-legislative. The Court noted that an administrative body has been realistically characterized as a fourth branch of government. *Id.,* at 458 n. 20.

In *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971), it was held that a local legislative body, in deciding a rezoning case, acts in an adjudicatory capacity, and not in a general law-making role:

> [W]hen the local legislative body is used as a vehicle not to make generally applicable law, rules, or policy, but to decide whether a particular individual as a result of a factual situation peculiar to this situation is or is not entitled to some form of relief, then the so-called legislative body must act in accordance with the basic requirements of due process as are applicable generally. Judicial review in this particular situation to determine whether or not the action is "arbitrary" concerns itself with whether the basic elements of due process have been afforded including whether the action was based upon substantial evidence. To declare otherwise would sanction organized favoritism and perpetuate this anomaly: Constitutionally guaranteed freedom from arbitrary action applies only to recommendations and not to accomplished fact in rezoning cases.

*Id.,* at 178.

█ While the zoning classification which an individual property owner should enjoy is not a justiciable issue, an ordinance effecting an amendment to reclassify a particular property is nonetheless the culmination of a process essentially adjudicatory. KRS 100.211 creates (or perhaps merely confirms) the right of a property owner to propose an amendment. Any amendment must be consistent with the comprehensive zoning plan, unless the plan is found to be inapplicable to the situation presented.[8]

---

6. "Legislative power vested in General Assembly. The legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.'" Ky. Const. section 29.

7. Under KRS 100.055, since repealed, the power to finally approve or deny adjustments was del-

egated to the Planning and Zoning Commission, rather than to the legislative body.

8. "Before any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the community's comprehensive plan, or, in the absence of such a finding, that one or more of the following apply and

The interests of an identifiable, individual property owner are weighed against the statutory criteria, and, often, against the interests of identifiable opponents of the amendment. The determination turns upon facts specific to one discrete property. Such fact-finding, although hybrid, is inherently more adjudicative than legislative, and the result must be supported by substantial evidence.

Appellees submit that the veto in the present case *was* supported by substantial evidence. This argument misses the point. The executive power of veto (Latin, "I forbid") is present in the history and philosophy of our system of government as a check against the law-making power of the legislature. It is intrinsically arbitrary and, where constitutionally granted, nonreviewable. The fact that the charter requires the mayor to inform council of the reasons for his action does not render the veto power less arbitrary. The Kentucky Constitution similarly requires the governor to state his/her objections to a vetoed bill.[9] The judiciary may not decide the merits of those objections; only the legislative body may, in reconsidering the legislation.[10]

In the present case, even if the effect of the veto (i.e., denial of the amendment) was supported by substantial evidence, and even though the veto might be overridden by a 3/5 vote of council,[11] these considerations do not secure to the applicant either the due process or the equal protection of law guaranteed by the Kentucky and United States constitutions.[12] The veto power would invite arbitrary discrimination between applicants who had emerged from the due process arena of council, according to the statutory paradigm, with equal success. One, perhaps at the mere whim of the mayor, might be burdened to persuade a super-majority of the council of the merits of his cause, or to convince a reviewing court that denial of the amendment was without substantial evidentiary basis; whereas a second, finding the mayor favorably disposed, could repose if the decision of council was supported by substantial evidence. Furthermore, and perhaps most significantly, the veto power could be exercised *only* to *defeat* an amendment once passed; it could never be applied to revive a proposal which had failed before the council. It would thus constitute a formidable, perhaps decisive resource beneficial *only* to the opponents of an amendment—that is, only to those on *one side* of a controversy, in a proceeding to which severe due process requirements attach.

Once a proponent of a zoning map amendment has prevailed before the local legislative body under KRS 100.211(1), the

such finding shall be recorded in the minutes and records of the planning commission or the legislative body or fiscal court.
    (a) That the original zoning classification given to the property was inappropriate or improper.
    (b) That there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of such area." KRS 100.213(1).

**9.** Ky. Const. section 88. *Cf.* U.S. Const.Art. 1 section 7.

**10.** But if *every* bill of Congress or the General Assembly is subject to veto, why not every ordinance of the Urban County Council? A rezoning ordinance is a separate species of enactment. It is hierarchical, emerging from a statutorily imposed amendment procedure, to which the charter, authorizing veto, must yield. A rezoning ordinance is not a general law, but

represents a decision on reclassification of a specific property, a decision of adjudicative fact which must be based on substantial evidence. Moreover, the General Assembly has expressly provided for judicial review of the outcome. None of these characteristics is found in bills of Congress or the General Assembly.

**11.** Lexington–Fayette Urban County Charter section 5.05, *supra.*

**12.** "Absolute and arbitrary power denied. Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a republic, not even in the largest majority." Ky. Const. section 2.

"All men, when they form a social compact, are equal...." Ky. Const. section 3.

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend. 14, section 1.

constitution will not accommodate a peremptory mayoral power to dictate that the successful applicant is to become an appellant, rather than an appellee.

The judgment is reversed and this matter is remanded to the Fayette Circuit Court with directions to enter a new judgment in conformity with this Opinion.

STEPHENS, C.J., and LAMBERT and REYNOLDS, JJ., concur.

LEIBSON, J., concurs in result only.

WINTERSHEIMER, J., dissents by separate opinion, in which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the statute provides no specific limitation on the veto power of the Mayor. K.R.S. 67A.010 is the legislative grant authorizing local determination regarding the structure of urban county government. K.R.S. 67A.070(4) provides the chief executive officer of the urban county government with a timely veto power. It also recognizes that limitation on the veto power may be established by charter. Section 5.05 of the charter of the Lexington–Fayette Urban County Government limits the veto power of the mayor to act and specifically lists four areas where the mayor has no veto power. Section 5.05 does not mention any limit on the veto power of the mayor regarding zoning ordinances. In view of the absence of any specific limitation, the Mayor was within his rights to veto this zoning ordinance.

It should also be observed that the veto power of the mayor may be overridden by a three/fifths vote of the council. No such vote to override was taken.

The contention that the mayor was arbitrarily using his power was without merit. As long as the zoning decision is based on logic and reason, the court should not substitute its judgment for that of the local authority. *Fried v. Louisville & Jefferson County Planning and Zoning Commission*, Ky., 258 S.W.2d 466 (1953). There is no evidence that the mayor was arbitrary in exercising his veto. As a matter of fact, his veto reinstated the decision of the Plan-

ning and Zoning Commission. I would affirm the decision of the Court of Appeals.

SPAIN, J., joins in this dissent.