RENDERED: MARCH 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1284-MR

MIKE HOWARD; ANDREA
HOWARD; CHRISTINA NEISES;
DAVID ARMSTRONG; DONALD
STAHL; JACKIE STAHL; JENELLE
ARMSTRONG; AND PETE NEISES                          APPELLANTS


                    APPEAL FROM CAMPBELL CIRCUIT COURT
v.              HONORABLE JULIE REINHARDT WARD, JUDGE
                        ACTION NO. 23-CI-00702


CAMPBELL COUNTY &
MUNICIPAL PLANNING & ZONING
COMMISSION; C.J. PETERS;
DENNIS BASS; JEFF SCHUCHTER;
JUSTIN VERST; LARRY BARROW;
MARK TURNER; MICHAEL
WILLIAMS; ROGER MASON;
SHARON HAYNES; AND TROY
FRANZEN                                             APPELLEES


                              OPINION
                             AFFIRMING

                          ** ** ** ** **

BEFORE: CETRULO, CALDWELL, AND L. JONES, JUDGES.

CETRULO, JUDGE:  This appeal arises from a challenge to a Campbell County and Municipal Planning and Zoning Commission ("the Commission") action in July 2023.  The action taken was the adoption of amendments to subdivision regulations at a public hearing.  Some residents of Campbell County, including Andrea Howard, Mike Howard, Jackie Stahl, Donald Stahl, Jenelle Armstrong, David Armstrong, Christina Neises, and Pete Neises (hereinafter "Appellants"),[1] filed suit in the circuit court seeking to appeal the adoption of the amendments.  They also sought a declaration that the notice given of the public hearing was insufficient.  The circuit court held that the statutory notice given herein was sufficient and further that the adoption of the amendments by the Commission did not constitute a "final action" appealable under Kentucky Revised Statute ("KRS") 100.347.  For the reasons set forth below, we affirm the Campbell Circuit Court and its dismissal of the appeal.

**FACTUAL BACKGROUND**

At its regularly scheduled meeting on July 11, 2023, the Commission planned to consider text amendments to its subdivision regulations.  Article 1, Section 130 of the Campbell County Subdivision Regulations required the Commission to hold a public meeting prior to adopting or amending those

---

[1] The original complaint included a party that subsequently withdrew, and an amended complaint was permitted to be filed by the circuit court's order of November 3, 2023.

regulations and to publish notice of the meeting, including the time and place, in accordance with KRS Chapter 424. On June 16, 2023, the Commission published the following legal notice in the *Kentucky Enquirer*:

> [The Commission] will hold a Public Hearing on Tuesday, July 11th, 2023 at 6:30 PM (EST) on the Campbell County Fiscal Court Chambers located at 1098 Monmouth St. Newport, KY 41071 for the purposes of hearing testimony for . . . [p]roposed text amendments to the Campbell County and Municipal Subdivision Regulations regarding Design Standards for Subdivision Review[.]

At the July 11, 2023 meeting, the Commission adopted the proposed amendments. Reportedly, no members of the public attended.

Appellants promptly filed a complaint seeking to reverse the Commission's actions taken at the hearing. In particular, the complaint alleged that the Commission did not publish its required legal notice in a "qualified newspaper" pursuant to KRS 424.120, thereby rendering the notice defective. Without proper notice, Appellants contended the Commission acted arbitrarily and exceeded its statutory authority. *See* KRS 100.273(1) ("Any planning commission which has completed the objectives, land use plan, transportation plan, and community facilities elements of a comprehensive plan may adopt regulations for the subdivision of land within its boundaries[.]"). For this cause of action, Appellants relied on KRS 100.347 as the procedural avenue to challenge the Commission's decision. At the time of the complaint's filing, KRS 100.347(2)

-3-

provided in part that "[a]ny person or entity claiming to be injured or aggrieved by any final action of the planning commission shall appeal from the final action to the Circuit Court of the county in which the property, which is the subject of the commission's action, lies." Appellants likewise relied on KRS 100.347(3), which allowed for an "injured or aggrieved" party to appeal the final action "of the legislative body of any city, county, consolidated local government, or urban-county government, relating to a map amendment . . . to the Circuit Court of the county in which the property, which is the subject of the map amendment, lies."

Appellants asked the circuit court to void the adopted regulations, claiming to be "injured and aggrieved" by the Commission's improper notice and thereby denied an opportunity to participate in the public hearing. Beyond the allegations of the complaint, there is little in the record regarding the actual substance of subdivision regulations other than that the amended provisions concerned high-density residential cluster subdivisions. To that end, the complaint simply averred that Appellants were residents of Campbell County whose land rights may be affected by the adopted regulations.[2]

---

[2] In their brief, Appellants referenced previous actions by the Commission, which led to prior filings and appeals to this Court. In the first, a different division of the Campbell Circuit Court dismissed, for lack of jurisdiction, a petition by these parties for a declaration of rights. This Court affirmed on appeal. *See Preserve, Protect & Keep South Campbell Cnty. Rural, LLC v. Campbell Cnty. Fiscal Ct.*, No. 2023-CA-1304-MR, 2024 WL 3463407 (Ky. App. Jul. 19, 2024). In the second, many of these same parties sought to appeal from a zoning amendment approved by the Commission at a public hearing in March 2022. That amendment was then approved by the fiscal court, and an appeal to a different division of the Campbell Circuit Court followed.

For the remaining causes of action, Appellants petitioned for declarations that the *Kentucky Enquirer* was not a qualified newspaper to publish legal notices in Campbell County and that the Commission's July 11, 2023 meeting and any action taken therein were void. Appellants also requested injunctive relief prohibiting the Commission from implementing or enforcing the adopted revisions to the subdivision regulations.

In May 2024, the Commission moved for summary judgment, first contending that the act of adopting amendments to subdivision regulations did not constitute a "final action" for purposes of appeal under KRS 100.347. The Commission noted that KRS 100.347(5) states "[f]or purposes of this chapter, final action shall be deemed to have occurred on the calendar date when the vote is taken to approve or disapprove the matter pending before the body." In this context, the Commission argued that approvals of applications for subdivision plats or development plans were the type of matters that "pend" before it; accordingly, a final action must concern a decision about applying zoning ordinances or

---

The circuit court therein ordered remand for further proceedings on a claim that due process rights were violated by denial of right to cross-examine representatives of the Commission. On appeal to this Court, a different panel held that the complaint filed in that case did not provide factual allegations to support a claim that they themselves were injured or aggrieved in some way to fit within the statutory language authorizing an appeal. This Court remanded for the circuit court to enter an order dismissing the appeal. *See Campbell Cnty. & Mun. Planning & Zoning Comm'n v. Armstrong*, No. 2023-CA-0409-MR, 2025 WL 807441 (Ky. App. Mar. 14, 2025). A motion seeking discretionary review by the Kentucky Supreme Court remains pending.

subdivision regulations to *specific* properties, and KRS 100.347 did not permit an appeal of generally applicable subdivision regulations.

The Commission also argued that the notice of its July 11, 2023 meeting was properly published and sufficiently detailed to comply with KRS 424.120. At the time of publication, KRS 424.120(1) required a newspaper publishing legal advertisements to meet several criteria to constitute a "newspaper of record" for a given jurisdiction, including mandates that it be published in the publication area, be of regular issue and have a bona fide circulation in the publication area, and meet specific content thresholds. KRS 424.120(1)(a)-(c).[3] On June 16, 2023, no newspaper met all statutory requirements to qualify as a legal publication of record for Campbell County under KRS 424.120(1). The Commission, therefore, relied on the following exception in KRS 424.120(2)(b) when it chose to publish its notice in the *Kentucky Enquirer*:

> If, in any county there is no newspaper meeting the requirements of this section for publishing advertisements for that county, any advertisements required to be published for the county or for any publication area within the county shall be published in a newspaper of the largest bona fide circulation in that county published in and qualified to publish advertisements for an adjoining county in Kentucky.

---

[3] Shortly after the Commission published notice on June 16, 2023, the General Assembly amended KRS 424.120 to add subsection (4), which permits publication in a digital newspaper meeting certain criteria. *See* KRS 424.120(4)(a)-(f).

The Commission argued that the *Kentucky Enquirer* met this exception, as it had the largest bona fide circulation in Campbell County and was a qualified newspaper in Kenton County – a county adjoining Campbell County. Appellants countered that the *Kentucky Enquirer* failed to satisfy this exception on the basis that its principal office was in Boone County – a county adjoining Kenton County but not Campbell County. In making this counterargument, Appellants relied on KRS 424.120(1)(a), which provided that "[a] newspaper shall be deemed to be published in the area if it maintains its principal office in the area for the purpose of gathering news and soliciting advertisements and other general business of newspaper publications, and has a periodicals class mailing permit issued for that office." In essence, Appellants contended that a newspaper must qualify under KRS 424.120(1) in the adjoining county for subsection 2(b) to apply.

Following oral arguments and additional briefing by both parties, the Campbell Circuit Court issued its opinion and order holding that Appellants' appeal must be dismissed as the circuit court can only hear appeals under KRS 100.347 from a final action. As the court noted, "[t]here is a limit to what types of administrative decisions this court has the power to hear via an appeal. . . . Unless the action by the Commission constitutes a *final action* within the meaning of the statute, it is not appealable under KRS 100.347(2) or (3)." (Emphasis added.) The circuit court further concluded that a "final action" for purposes of an appeal under

-7-

KRS 100.347 meant a decision made by the Commission when acting "in an adjudicative capacity." On the other hand, a decision made by the Commission in its legislative or lawmaking capacity – *e.g.*, adopting generally applicable regulations – did not adjudicate the rights of any individual and did not constitute a final action appealable under KRS 100.347.

As to the remaining causes of action concerning the publication and content of the legal notice, the circuit court granted the Commission's motion for summary judgment. In its opinion, the court found that, since the *Kentucky Enquirer* was qualified to publish legal notice within Kenton County and was the newspaper of largest bona fide circulation in Campbell County, it was qualified to publish the advertisement. Finally, the circuit court held that the content of the notice was sufficient. This appeal followed.

Before this Court, Appellants assert that the circuit court erred in finding the lack of any final action on the part of the Commission. They further argue the insufficiency of notice through the publication source.[4]

---

[4] Appellants also assert that the provisions of KRS 100.273 violate the separation of powers doctrine and are an unconstitutional delegation of lawmaking to an administrative agency. We do not address this argument as it was not fully raised or addressed by the circuit court below. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citing *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989)).

## STANDARD OF REVIEW

This matter is before us upon review of the circuit court's order dismissing Appellants' claim under KRS 100.347 for failing to comply with the statute by appealing from a "final action" and granting the Commission's motion for summary judgment. Statutory interpretation is a question of law, which we review *de novo*. *Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013) (citing *Kentucky Emps. Mut. Ins. v. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007)). When interpreting a statute, our paramount concern is "to ascertain and give effect to the intent of the general assembly." *Spencer Cnty. Pres., Inc. v. Beacon Hill, LLC*, 214 S.W.3d 327, 329 (Ky. App. 2007).

When a trial court grants summary judgment in a declaratory judgment action with no bench trial, as occurred here, "we use the appellate standard of review for summary judgments." *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (citation omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citation omitted).

## ANALYSIS

We begin with the issue of whether Appellants' appeal to the Campbell Circuit Court was proper under KRS 100.347. As noted, that statute permits appeals from decisions by local administrative bodies but requires that the citizen or entity appealing is "injured or aggrieved" by the decision and that the decision constitutes a "final action." KRS 100.347.

In a recent opinion addressing this language, our Supreme Court stated that the language of KRS 100.347 is clear and unambiguous. *Kenton Cnty. Bd. of Adjustment v. Meitzen*, 607 S.W.3d 586, 592 (Ky. 2020). *Meitzen* dealt with an appeal from a final action of a board of adjustment under KRS 100.347(1), and our Supreme Court held that "a complaint pursuant to KRS 100.347(1) must reflect how the plaintiff fits into the [strict] statutory language authorizing an appeal." *Id.* at 593.

While subsections (2) and (3) of KRS 100.347 pertain to appeals from actions by a planning commission or local legislative body respectively, these subsections contain the applicable language also used in subsection (1): specifically, that "[a]ny person or entity claiming to be injured or aggrieved by any final action" of the administrative agency may file an appeal to the circuit court of the county in which the subject property is located. *See* KRS 100.347(1)-(3).

Although the issue in *Meitzen* centered on whether the appealing party was "aggrieved or injured," our Supreme Court emphasized longstanding precedent in reaching its conclusion:

> As a general rule, no appeal to the courts from an administrative agency exists as a matter of right. *Kentucky Unemp. Ins. Comm'n v. Norman Wilson & Universal, LLC*, 528 S.W.3d 336 (Ky. 2017). "The right to appeal the decision of an administrative agency to a court is a matter of legislative grace." *Nickell v. Diversicare Mgmt. Servs.*, 336 S.W.3d 454, 456 (Ky. 2011). Consequently, "the failure to follow the statutory guidelines for such an appeal is fatal." *Triad Dev./Alta Glyne, Inc. v. Gellhaus*, 150 S.W.3d 43, 47 (Ky. 2004). For over forty years, Kentucky courts have required strict compliance with the provisions of KRS 100.347.

*Meitzen*, 607 S.W.3d at 593.

Here, the complaint alleged generally that Appellants were residents of unincorporated Campbell County "subject to all of the subdivision regulations adopted and passed by the planning commission at the July 11, 2023 meeting." Appellants did not allege an injury or grievance based on the substance or application of regulations themselves; instead, they based their injury on the allegedly insufficient notice of the July 11, 2023 meeting. Nonetheless, Appellants purport that any Commission decision is subject to appeal under KRS 100.347. We disagree. Upon review, we agree with the circuit court that the action taken by the Commission did not constitute a final action within the meaning of KRS 100.347.

-11-

In reaching this conclusion, the circuit court appropriately relied on our Supreme Court's opinion in *Hacker v. Baesler*, 812 S.W.2d 706 (Ky. 1991), a case concerning the application of a mayoral veto to a rezoning ordinance, to conclude that the final action must be of an adjudicative nature to be appealable under KRS 100.347.

The *Hacker* opinion addresses "the ultimate question," which is "considering the nature, subject, and purpose of the proceeding and the constitutional rights of the participants, how much process of law is due?" 812 S.W.2d at 709. The *Hacker* Court observed the distinction between an administrative body's legislative and adjudicatory roles, the latter requiring a comparably more heightened review to guard against arbitrariness:

> [W]hen the local legislative body is used as a vehicle *not* to make generally applicable law, rules, or policy, *but to decide whether a particular individual as a result of a factual situation peculiar to this situation* is or is not entitled to some form of relief, then the so-called legislative body must act in accordance with the basic requirements of due process as are applicable generally. Judicial review in this particular situation to determine whether or not the action is "arbitrary" concerns itself with whether the basic elements of due process have been afforded including whether the action was based upon substantial evidence.

*Id.* (emphasis added) (quoting *City of Louisville v. McDonald*, 470 S.W.2d 173, 178 (Ky. 1971)).[5]

At its July 11, 2023 meeting, the Commission did not decide whether any Appellant, or other individual for that matter, "as a result of a factual situation peculiar to his [or her] situation is or is not entitled to some form of relief." In other words, it did not act in an adjudicatory manner. As Appellants accuse the Commission of taking arbitrary action, the nature of the Commission's decision matters. In *McDonald*, the Kentucky Supreme Court explained that when an administrative body makes policy or adopts generally applicable rules and regulations, "the concept of what is 'arbitrary' is much more narrowly constricted in that event." 470 S.W.2d at 178.

> In exercising the enumerated zoning procedures under KRS Chapter 100, when the local legislative body acts in a law-making or policy-making role with the result of such action generally applicable to all affected, its action is arbitrary if there is no rational connection between that action and the purpose for which the body's power to act exists. Where the existence of such rational connection is "fairly debatable" the action will not be disturbed by a court.

---

[5] *See also Trimble Fiscal Ct. v. Snyder*, 866 S.W.2d 124, 126 (Ky. App. 1993) (citing *McDonald*, 470 S.W.2d at 178) ("Applying the lessons of *McDonald* to this appeal, it is clear that the Trimble Fiscal Court was acting in an adjudicatory capacity, since it was deciding whether the Snyders' peculiar factual situation entitles them to relief . . . . As a result, the Trimble Fiscal Court was required to meet the basic requirements of due process, and judicial review is limited to determining whether the decision not to close the road was arbitrary, including whether there was substantial evidence to support the decision.").

*Id.*

While there are procedures designed to afford due process to parties affected by matters pending under KRS 100.347, one does not have an automatic appeal from an action that is essentially legislative in character, such as the passage of a statute or ordinance. *Harrison's Sanitarium, Inc. v. Commonwealth, Dep't of Health*, 417 S.W.2d 137, 138-39 (Ky. 1967) ("Once promulgated, an administrative regulation is final in the same sense that a legislative act is final. One does not appeal from an action that is essentially legislative in character.").

Indeed, as the circuit court observed, a survey of KRS 100.347 cases is characterized by appeals from final actions adjudicating matters specific to individual parties and their properties. *See Meitzen*, 607 S.W.3d at 589-90 (reviewing appeal from board of adjustment's approval of conditional permit application for a nursing school); *Spencer Cnty. Pres.*, 214 S.W.3d at 328 (reviewing appeal from fiscal court's approval of zoning map amendment authorizing property's change from agricultural to residential); *Warren Cnty. Citizens for Managed Growth, Inc. v. Bd. of Comm'rs of City of Bowling Green*, 207 S.W.3d 7, 9 (Ky. App. 2006) (reviewing appeal of city ordinances rezoning properties from agricultural to industrial); and *Davis v. Richardson*, 507 S.W.2d 446 (Ky. 1974) (reviewing appeal regarding landowner's application for conditional use permit to operate a private social club). Those cases require the

-14-

showing of a particular injury, not an unspecified objection to an administrative body's generally applicable decision.

In *Spainhoward v. Henderson, Henderson County Board of Zoning Adjustment*, this Court addressed the issue of "whether the Board's determination that a recycling business is an inappropriate use within a general business district is a final action subject to judicial review[.]" 7 S.W.3d 396, 397 (Ky. App. 1999). The codes administrator for the city initially approved plaintiff's application for a business license and certificate of occupancy to operate a recycling business. Upon appeal by a nearby property owner, the board of zoning adjustment found that the recycling business was an "inappropriate use" and reversed the code administrator's decision. *Id.* Nevertheless, the board also ruled that plaintiff could apply for a conditional use permit and continue running his business until the board's next meeting. *Id.* The plaintiff instead appealed under KRS 100.347 to the circuit court, arguing that the board's vote constituted a final action. *Id.*

The circuit court disagreed and dismissed plaintiff's appeal, noting that he did not seek a conditional use permit and thereby failed to exhaust his administrative remedies before seeking judicial review. *Id.* at 398. This Court reversed, first observing that per KRS 100.347, a final action occurs "on the calendar date when the vote is taken to approve or disapprove the matter pending before the body." *Id.* (quoting KRS 100.347(5)). Next, this Court agreed with the

-15-

prerequisite of exhausting administrative remedies but held that the plaintiff in *Spainhoward* did just that. Requiring the plaintiff to apply and wait for a decision on a conditional use permit before appealing to the circuit court would have no impact on the Board's vote at issue: "The matter pending before the Board was whether [plaintiff]'s recycling center was a permitted use in a general business district. It took final action on this matter when it voted that the use was not permitted." *Id.* at 400.

The *Spainhoward* opinion is a needle in the haystack of land-use appellate cases touching on what constitutes "final action" beyond the statutory language of KRS 100.347(5). It is significant to our review of the present case, as it provides direct support that a final action involves the adjudication of a plaintiff's personal or property interest, ultimately determining "whether a particular individual as a result of a factual situation peculiar to his situation is or is not entitled to some form of relief[.]" *McDonald*, 470 S.W.2d at 178.

In this case, not one of the Appellants initiated nor was subject to any proceeding requiring the Commission to undergo a hearing to adjudicate individual rights. The Commission acted in a legislative, lawmaking capacity when adopting amendments to the subdivision regulations, in accordance with state and local statutory authority. The passage of amendments to subdivision regulations was not

a final action adjudicating any matter particular to a specific individual or property to permit an appeal under KRS 100.347.[6]

Appellants point to our Supreme Court's decision in *Louisville Historical League v. Louisville/Jefferson County Metro Gov't*, 709 S.W.3d 213 (Ky. 2025), for their position that circuit courts have inherent power to review and check administrative agencies when acting arbitrarily or without legal authority. Appellants assert that this case holds that judicial review of an administrative agency is so inherent that it provides them with "standing" to challenge the subdivision regulations, regardless of any effect on their property interest or final action. We do not read *Louisville Historical League* so broadly. The Court therein explained that an aggrieved party has an inherent right to *seek* judicial review of an alleged arbitrary action, but it did not eliminate the statutory requirement to plead an injury or particularized aggrievement, nor the requirement of a final action. *Id.* at 227. To hold otherwise would permit appellate jurisdiction for every act of zoning or subdivision rulemaking that would be at odds with the "clear and unambiguous language" of KRS 100.347 as recognized by our Supreme Court. *See Meitzen*, 607 S.W.3d at 595.

---

[6] In this Court's prior 2024 ruling in *Preserve, Protect & Keep South Campbell County Rural*, we noted that plaintiff had not established statutory standing because it merely alleged that it would be injured by the implementation of general subdivision regulations not by a particularized final action. 2024 WL 3463407, *4.

In fact, the majority of our Supreme Court in *Louisville Historical League* specifically stated its intent to reconcile an apparent split of authority regarding judicial review for arbitrariness and the doctrine of legislative grace by clarifying the distinction between subject-matter jurisdiction and particular case jurisdiction: "[A] citizen has an inherent right of appeal from administrative decisions and the judiciary has general subject matter jurisdiction to review administrative decisions for arbitrariness. *Compliance with particular statutory requirements on how to invoke that jurisdiction will always therefore be an issue of particular-case jurisdiction*." *Id.* at 226-27 (emphasis added). However, in that case, our Supreme Court found that a challenge to particular-case jurisdiction or statutory standing was not raised before the circuit court. *Id.* at 227. That is not the case herein.

KRS 100.347 still "creates a narrow avenue to appeal." *Meitzen*, 607 S.W.3d at 595. "By limiting the appeal process to certain injured or aggrieved persons or entities, the legislature has effectively prevented the filing of unnecessary and unfounded complaints by any citizen who simply disagrees with the board of adjustment's action." *Id.* That rationale likewise supports the requirement of a final, adjudicatory, action to appeal. Accordingly, where an appeal from an administrative body is filed in the circuit court by grant of a statute, as in this case, the parties must strictly comply with the dictates of that statute. *See*

-18-

*Ky. Unemp. Ins. Comm'n*, 981 S.W.2d at 139-40 (citations omitted); *Spencer Cnty.*

*Pres.*, 214 S.W.3d at 329.

For all the foregoing reasons, we affirm the Campbell Circuit Court's

order dismissing the appeal as being taken from a non-final action.

Secondarily, the circuit court also determined that the Commission

had acted in conformity with the statutes in its notice of the meeting through the

*Kentucky Enquirer*.  Specifically, the court pointed to the opening language of

KRS 424.120 that "[*e*]*xcept as provided in subsections (2) and (4)*," the

publication shall be made in a newspaper that meets certain requirements.  Then, as

the Commission argued, subsection 2(b) provides for options for publication where

no newspaper within the area meets those requirements.  Here, the *Kentucky*

*Enquirer* was an established, print newspaper of general circulation in the greater

Northern Kentucky area.  The principal office of the *Kentucky Enquirer* is in

Boone County, rather than the directly contiguous Kenton County.  However,

when the notice was published for the July 11, 2023 meeting, the *Kentucky*

*Enquirer* was the only newspaper of bona fide circulation in Campbell County.

While we conduct a *de novo* review, we believe the circuit court properly

interpreted the statute herein.  The language of subsection 2(b) does not state that

the qualified newspaper of record in an adjoining county must also be qualified

through the requirements of subsection (1).  It was undisputed before the circuit

-19-

court that the *Kentucky Enquirer* was qualified to publish legal notice within Kenton County, which adjoins Campbell County. It was the newspaper of largest bona fide circulation in Campbell County at the time of the notice. Accordingly, it was qualified to publish the notice. We also note that our Supreme Court has found substantial compliance regarding publication requirements to be sufficient. *Conrad v. Lexington-Fayette Urb. Cnty. Gov't*, 659 S.W.2d 190, 195 (Ky. 1983).

For all the foregoing reasons, the Order of the Campbell Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Steven J. Megerle
Covington, Kentucky

BRIEF FOR APPELLEES:

Jeffrey C. Mando
Casmir M. Thornberry
Covington, Kentucky